MICHAEL HOFFMAN (SBN 154481)
HOFFMAN EMPLOYMENT LAWYERS, LLP
100 Pine Street, Suite 1550
San Francisco, CA 94111
Telephone: (415) 362-1111
Facsimile: (415) 362-1112
Email: mhoffman@employment-lawyers.com

Attorneys for Plaintiffs
JACUELINE DOMNITZ, PAMELA TADDEI,
and IMELDA KANTERE

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| JACQUELINE DOMNITZ, PAMELA TADDDEI, and IMELDA KANTERE, on behalf of themselves, all others similarly situated, and the general public,<br><br>Plaintiffs,<br><br>v.<br><br>WAREHOUSE DEMO SERVICES, INC., a Washington Corporation and Does 1 through 10, inclusive,<br>Defendants. | Case No. CV-09-05305 MMC<br><br>**DECLARATION OF TARA MACOMBER**<br><br>Date:         November 4, 2011<br>Time:        9:00 a.m.<br>Courtroom: 7<br>Judge:       Hon. Maxine Chesney |

I, Tara Macomber, declare and say that I am an attorney at law duly licensed to practice in this state of California, and am counsel of record for Plaintiff Jacqueline Domnitz in Case No. CV-09-05305-MMC, *Domnitz v. WDS*. I make this declaration from my own personal knowledge. If called to testify, I could and would honestly testify as to the following:

1. In March, 2010, Ms. Domnitz had several emotional outbursts while I spoke with her

**DECLARATION OF TARA MACOMBER**
**Case No. CV-09-05305 MMC**

over the telephone. The emails mentioned herein exemplify her irrational behavior and emotional instability. Ms. Domnitz believed that Costco employees were harassing and following her from the store to the parking lot and that Costco would do something to her to make her disappear. She described her fears in an email (*See "EXHIBIT A"*) when she stated, "...**COSTCO IS going to ensure that I disappear. Men are hassling me in the parking lot. That is frightening.**"[sic]

2. Ms. Domnitz insisted that her individual claims be tethered with the class action suit. On March 16, 2010, Ms. Domnitz responded to my email asking for clarification if she wished to be removed as a Plaintiff in the case. In an email (*See "EXHIBIT A"*) she wrote, "**You may remove my name from the complaint if I don't receive an independent claim...If this cannot be done, then I have to walk.**"

3. On March 11, 2010, I tried to contact Ms. Domnitz by sending her an email (*See "EXHIBIT B"*) to determine if she wanted to be removed as a Plaintiff on the case. I wrote, "**I will take your name off as a named plaintiff if that is what you want to do. We have other plaintiffs, so it is not a problem.**"

4. On March 11, 2010, Ms. Domnitz sent me an email (*See "EXHIBIT C"*) in which she wrote, "**But I also see this case as lawyers fighting and coming out with all the money. Those who suffer the most will receive the least...However, I also don't have respect for all of you lawyers either. You burned me too. Please leave me alone.**"

5. On March 16, 2010, I attempted to seek clarification from Ms. Domnitz's about her wishes to be removed from the case in an email (*See "EXHIBIT A"*). I wrote, "**One thing that was unclear as to your email was whether you indeed want us to drop your name from the complaint. You said not to contact you but then sent two emails after...As you know, Michael had called you last week reaching out, but you did not return the call.**"

6. On September 2, 2011, Ms. Domnitz filed a letter to the court stating on page three

DECLARATION OF TARA MACOMBER
Case No. CV-09-05305 MMC

2

(See "*EXHIBIT D*"). "[Tara] told me it was awful that Michael had lied so many times. She commiserated with me about Michael's lack of condor." Ms. Domnitz's statement is completely untrue. I did not say those words or anything like it.

I declare under penalty of perjury of the laws of the State that the foregoing is true and correct. Executed in San Francisco, California on October 27, 2011.

Tara Macomber

DECLARATION OF TARA MACOMBER
Case No. CV-09-05305 MMC

3

# EXHIBIT A

RE: WDS
https://cunina.lunarservers.com:2096/3rdparty/squirrelmail/src/printer_...

| | |
|---|---|
| From: | "Jacqueline Domnitz" <jacqueline@langineers.com> |
| Subject: | RE: WDS |
| Date: | Tue, March 16, 2010 6:04 pm |
| To: | tmacomber@sfemployment-lawyers.com |

Dear Tara,

Thank you for your sensitivity to my prior messages and conversation with you. I am thrilled that many employees have come forward and told about the treatment received during their employment with WDS. I hope that you truly get their names as plaintiffs on this case. That would be close to a miracle. However, those who remain employees/plaintiffs will suffer much. I fear for their safety and future employment.

I realize that when I worked at WDS after filing the complaint I became poison. One elderly woman employee told me, "plaintiffs are crucified." I said, "It's too late, it's been done."

I have thought about this lawsuit much more than you know. I have wrestled with the thought that it worked for 20 years and nobody ever did anything, and why did I have to do this? For many weeks at a time, I doubted myself. I felt that I had been duped.

Michael left a message on my phone the other day asking if I got over the ordeal yet? My answer is, "NO MICHAEL, I HAVEN'T GOT OVER IT BECAUSE COSTCO IS going to ensure that I disappear." Men are hassling me in the parking lot. That is frightening. So Michael, what would you tell your wife, daughter or sister?

Tara, I am torn because I want to see things change for the better. Finally, I believe that I have been forgotten and silenced by the lawyers and Costco. Unfortunately, even my own lawyer. This isn't working for me the way it is now.

YOUR WORDS: Michael has indicated that he is willing to review the facts to see if an
independent retaliation claim can be made against wds on your behalf.
MY RESPONSE: I want the answer to that question before going forward.

You may remove my name from the complaint if I don't receive an independent claim. I want the egregious acts of retaliation against me addressed. If this cannot be done, then I have to walk.

Sincerely yours,
Jacqueline Domnitz


-----Original Message-----
From: tmacomber@sfemployment-lawyers.com
[mailto:tmacomber@sfemployment-lawyers.com]
Sent: Tuesday, March 16, 2010 3:51 PM
To: Jacqueline Domnitz
Cc: mhoffman@employment-lawyers.com
Subject: WDS

Dear Jacqueline,

I received your emails. I want to make a few points clear so you understand the state of the situation completely. Since the onset of this case, many employees have come forward and told us about the treatment received during their employment with WDS. A few of those employees and former employees desire to be plaintiffs on the case. I am amending the complaint to include the other plaintiffs and other allegations that people have come forward to tell us about. We feel we have a good case against WDS and should be successful and their practices will change.

One thing that was unclear as to your email was whether you indeed want us to drop your name from the complaint. You said not to contact you but then sent two emails after. I got an impression you may be conflicted. Nevertheless, I was confused. I think it would be a shame if you dropped the case at this point. I understand and am deeply sorry about the retaliation you have experienced from going forward with this case but, rest assured, you are not alone.

Michael has indicated that he is willing to review the facts to see if an independent retaliation claim can be made against wds on your behalf.

Many since you have come forward and have taken a stand against the employment practices of WDS.

I am confident you will be subpoenaed in this matter and suspect the only affect your dropping out of the case now will have is to reduce any recovery you get. You mentioned you are not concerned with money, but I want to make that perfectly clear, again. Because of the harassing treatment you received, I have an interest in seeing you gain something from this horrific experience, albeit monetary. I feel empathetic to your situation and would love to keep your name on the amended complaint next to the other plaintiffs but understand your fear of further retaliation.

Kindly let us know whether you want to drop the case. Although your emails have been detailed, they have not stated as much. Please let me know by tomorrow morning whether you want me to remove your name in the amended complaint. Again, I need the statement to be simple such as "take me off the case" or "remove my name from the complaint," so I can clear up my confusion. I would be happy to remove your name if that is your desire but I do not want to deprive you of your entitlement unless I am sure and it is clear. If I do not hear back from you by the morning I will assume you desire to be removed from the case.

If you have any comments or concerns, please do not hesitate to call me. As you know, Michael had called you last week reaching out, but you did not return the call

415-362-1111

Sincerely,

Tara

10/27/2011 9:57

# EXHIBIT B

Vice president


-----Original Message-----
From: tmacomber@sfemployment-lawyers.com
[mailto:tmacomber@sfemployment-lawyers.com]
Sent: Thursday, March 11, 2010 9:37 AM
To: Jacqueline Domnitz
Cc: mhoffman@employment-lawyers.com
Subject: WDS


Hi Jacqueline,

I am writing to follow up on our discussion on Tuesday. I am amending
the
complaint against WDS. I will take your name off as a named plaintiff if
that is what you want to do. We have other plaintiffs, so it is not a
problem.

However, I just wanted to make sure you know that while it won't affect
the case necessarily, it will affect your recovery in the case. Also,
you
will still be involved as the defendant is likely to subpoena you and
depose you. I need you to tell me in a plain statement if you do indeed
want us to take your name off of the complaint and replace it with our
other plaintiffs. I also want to make sure you understand how it will
affect you.

Michael forwarded me your email conversations. However, I was a little
confused as to the crux of your message.

Again, I am sorry for all of your troubles and your feeling retaliated
against and unsupported. I completely understand if you no longer have
the
stamina to continue in this suit, just please make that clear in
writing.

Thank you for all of your time and support,

Tara



This message contains confidential information and is intended only for the
individual named. If you are not the named addressee you should not disseminate,
distribute or copy this e-mail. Please notify the sender immediately by e-mail if
you have received this e-mail by mistake and delete this e-mail from your system.
E-mail transmission cannot be guaranteed to be secure or error-free as information
could be intercepted, corrupted, lost, destroyed, arrive late or incomplete, or
contain viruses. The sender therefore does not accept liability for any errors or
omissions in the contents of this message, which arise as a result of e-mail
transmission. If verification is required please request a hard-copy version.
LANgineers, Inc. www.langineers.com

# EXHIBIT C

From: "Jacqueline Domnitz" <jacqueline@langineers.com>
Subject: FW: Witness Intimidation - dripping blood
Date: Thu, March 11, 2010 7:21 pm
To: tmacomber@sfemployment-lawyers.com,"Michael Hoffman" <mhoffman@employment-lawyers.com>

Think about the danger of blood getting in the food samples. Any employee with a cut should be removed (with pay, damn it). But that does not ever happen. Think how dangerous that is too. That girl worked all day and the next with that bloody finger.

The list goes on and on. The burns as big as saucers. I have seen that. I know who she is too. I only saw one that big. I saw smaller ones.

Oh yeah, and they send the oven mitts home with whatever knucklehead will wash them. I know the women who have washed them. Not all of them can because they don't own washers and they don't have the money!

Imagine that. I bought my own (really groovy) oven mitts and potholders made out of this cool space-age material that can be washed in the dishwasher! I had the coolest cart in the store! I was really proud of my little enterprise. I thought that WDS could have appreciated a lady like me. Man, was I ever wrong.


Jacqueline Domnitz
LANgineers, Inc.
Vice president




-----Original Message-----
From: Jacqueline Domnitz
Sent: Thursday, March 11, 2010 6:13 PM
To: 'tmacomber@sfemployment-lawyers.com'; 'Michael Hoffman'
Subject: Witness Intimidation

A lot of things happened to me after I filed the lawsuit. I know that they are intimidating the witness. But the law isn't protecting me. And they (Costco's lawyers) are using that to insure that more employees do NOT SPEAK. These people (WDS employees) are not going to help you. Rest in that thought. They just don't have it inside them. They don't have the built-in support system. They are needy people, elderly, sickly, disadvantaged, recovering drug addicts, mothers who have lost custody of their own children, and just basically down and out people. They view the rich with skepticism.

Those witnesses are strung as tight as any human being can be. They will say the least. They will not volunteer.

They have been cut and injured on the job. I have watched blood drip from their fingers from dull knives purchased at the dollar store. And they still have those knives at all the stores. I have seen them when I go incognito to Costco.

People have been literally burned on their arms, hands, etc. They will

NEVER TALK ABOUT IT UNLESS YOU KNOW WHO THEY ARE. They don't even say, "Ouch." They just keep it all stuffed inside. It is weird. But they have complained to each other. And some of them complained to me. Some of them would run up and show me their blood. WDS does not act like an injury is anything. They do nothing. The supervisors don't even ask if we need a band-aid. Yes, that is really bad.

They have screamed until they are hoarse while on the floor demonstrating food or products. They are sort of "battered." But you will get nothing from them. Because they have to move on and make a buck.

Good luck.

Jacqueline Domnitz


-----Original Message-----
From: Jacqueline Domnitz
Sent: Thursday, March 11, 2010 5:48 PM
To: 'tmacomber@sfemployment-lawyers.com'; 'Michael Hoffman'
Subject: RE: WDS

When I was working at WDS during the month of October, I received several veiled threats. Costco employees would say, "Where do you live?" These were not people I knew. They would just walk up, say that and then walk away.

Now I had my car vandalized while parked at Costco while I was working inside the store. On that day in October, there were 6 or 7 grocery carts shoved up against my truck. There were no other carts anywhere in the parking lot except at my truck. All of the other carts were carefully put away except for those on my truck.

Now when I go shopping at Costco, I am harassed by Costco's employees (yes, even at other stores). They also gather carts and then they have two or three men just hanging beside my car. I have been literally followed by men from Costco to my vehicle. Then when I turn around or something, they get uncomfortably close and stare at my eyes. This is quite upsetting.

I believe they are going to hurt my home, me or my husband. I fear for my safety. I want you to know that I don't feel safe to be involved. And yes, anybody who comes forward is going to suffer some loss.

I am very angry with this corporate giant who takes advantage of the employees at WDS.

I know that I could send them to hell in a hand basket with my testimony.

But I also see this case as lawyers fighting and coming out with all the money. Those who suffer the most will receive the least.

I do hate Costco and WDS. They are one and the same.

However, I also don't have respect for all of you lawyers either. You burned me too.

Please leave me alone.

Jacqueline Domnitz
LANgineers, Inc.

# EXHIBIT D

that this case was so monetarily large according to Hoffman. Hoffman was visibly excited and he promised to take good care of me, his plaintiff.

I have attached (EXHIBIT A), my Retainer agreement with Hoffman Employment Lawyers. I also asked Michael Hoffman to keep me informed all along the way with copies of all pleadings, motions and letters about this case when I signed. He did not keep his word.

I thought that I had hired an attorney who could represent the class members. Michael Hoffman told me, "I know those lawyers. We're good friends." He assured me that the class action was the best way to ameliorate the dreadful workplace.

When I left WDS, it was like leaving the frying pan and jumping straight into the fire. My experience with Michael Hoffman has been awful. He has been rude, mercurial, misogynist, deceitful, and explosive. He goes on wild diatribes and verbal tirades whenever I ask a question about this case. He was scary.

After filing this litigation, Michael Hoffman told me to go back to work and tell Costco and WDS that I had filed this class-action litigation with Michael Hoffman. He told me exactly what to do, and this caused me a great deal of retaliation from everybody at WDS and Costco. He deliberately placed me in harm's way at WDS/Costco.

I immediately learned that something was very seriously wrong with Michael Hoffman. I did not want to participate in the litigation after I saw this evil side of Michael Hoffman. He enjoyed inflicting emotional duress on me repeatedly.

When it came time to give my deposition, I informed Michael Hoffman that I would not participate. I told him that I did not want to be around him. I informed Tara who called me several times that Michael had promised me specifics about what would and would not happen, and he knowingly and deliberately lied to me. I was very injured already by hiring Michael Hoffman. Tara told me that I would be subpoenaed regardless of my willingness to cooperate. I told her that I would not show up for a subpoena if it would help Michael Hoffman any further.

Eventually, Tara Comber convinced me that all the class members would suffer and that WDS would get away with all that they had done. She told me it was awful that Michael had lied so many times. She commiserated with me about Michael's lack of candor. I told Tara that Michael cared only about getting money from this litigation, and that he did not have one shred of veracity in his brain. I told her that he inflicted emotional duress even when it was not necessary. I told Tara he lied for the sake of lying and even when he did not have to lie, Michael Hoffman continued to lie. I told Tara that Michael Hoffman was a sociopath.

Jacqueline Domnitz, Lead Plaintiff's Case No. CV-09-05305 MMC
Page 3